UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Brooke Damsgard, a minor appearing by
her parent and natural guardian, Melissa
Miles, individually,

        Plaintiff,

v.

Liberty Mutual Insurance Co., and Prudential
Property and Casualty Insurance Co.,

        Defendants.

Civ. No. 08-1416 (RHK/AJB)
**MEMORANDUM OPINION
AND ORDER**

---

Kathleen K. Curtis, Tewksbury & Kerfeld, PA, Minneapolis, Minnesota, for Plaintiff.

Jacob S. Woodard, Hinshaw & Culbertson LLP, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

This case involves an insurance-coverage dispute. Plaintiff Brooke Damsgard, by and through her mother and natural guardian Melissa Miles,[1] filed this action against Liberty Mutual Insurance Company and Prudential Property and Casualty Insurance Company,[2] requesting the payment of funds due and owing under a Miller-Shugart

---

[1] Formally known as Melissa Damsgard.

[2] The underlying insurance policy in this action was issued by Prudential Property and Casualty Insurance Company, which was later acquired by Liberty Mutual Insurance Company. (Defs.' Mem. in Supp. at 1 n.1.) These companies will hereinafter be referred to jointly as the "Defendants."

settlement agreement.[3] The parties now cross-move for summary judgment. For the reasons set forth below, the Court will deny both Motions.

## BACKGROUND

Melissa Miles ("Miles") and Scott Damsgard ("Damsgard") were married in 1997 and together had two children: Hunter and Brooke. (Miles Dep. Tr. at 6-8; S. Damsgard Dep. Tr. at 11.) In July 2002, the couple separated and the children soon thereafter moved with Miles into her mother's home.[4] (Miles Dep. Tr. at 7, 10-12, 45.) Pursuant to a temporary court order issued in November 2002, Miles was granted sole legal and physical custody of the children and Damsgard was given "reasonable and liberal parenting time." (Keith J. Kerfeld Aff. Ex. 2.) Damsgard exercised his parenting time every other weekend and on three non-consecutive weeks during the summer. (Miles Dep. Tr. at 12.) He would take the children for overnight stays at the home of his mother, Marlyes Damsgard, where he was living. (S. Damsgard Dep. Tr. at 10-12.) When the divorce was finalized in November 2003, Damsgard and Miles were given joint legal custody of the children with Miles retaining sole physical custody. (Kerfeld Aff. Ex. 4.)

On June 17, 2003, prior to the finalization of the divorce proceedings, Damsgard picked up the children for a week-long visitation period. (S. Damsgard Dep. Tr. at 17;

---

[3] "A Miller-Shugart settlement agreement . . . arises where an insurer denies all coverage for an accident, and the abandoned insured agrees with the accident victim that judgment in a certain sum may be entered against it in return for the accident victim releasing the insured from any personal liability and agreeing to seek coverage from the insurer." Stan Koch & Sons Trucking, Inc. v. Great W. Cas. Co., 517 F.3d 1032, 1037 n.4 (8th Cir. 2008).

[4] The children lived with Damsgard immediately after the separation for a two-week period as a result of Damsgard's temporary restraining order against Miles. (Miles Dep. Tr. at 45-49.)

Miles Dep. Tr. at 12.)  He then took the children with him to the home of his friend, Troy Brew.  (S. Damsgard Dep. Tr. at 17.)  While there, Brooke went into the backyard of Brew's home where she was attacked by his dog, resulting in severe injuries requiring multiple facial surgeries.  (Id. at 18; Compl. ¶ 18.)

Miles brought an action against Damsgard on behalf of Brooke, claiming that his negligent supervision resulted in Brooke's injury.  (Compl. ¶¶ 17, 26; Douglas A. Johns Aff. Ex. E.)  Damsgard notified the Defendants of the claim against him and sought coverage for his defense under his mother's homeowner insurance policy (the "Policy").  (Compl. ¶ 27; S. Damsgard Dep. Tr. at 24-25.)  The Defendants initially provided Damsgard with a defense, but later denied coverage.  (Johns Aff. Ex. H; S. Damsgard Dep. Tr. at 25.)  Specifically, coverage was denied pursuant to what is commonly referred to as a "household exclusion," which provides that there shall be no coverage for lawsuits in which an "insured" brings a lawsuit against another "insured" for bodily injury.  (Id. Exs. G-H.)  The Defendants asserted that Brooke was an "insured" under the Policy, and therefore, the household exclusion prevented coverage for the lawsuit against Damsgard, who was also an "insured."  (Id. Ex. H.)

After Damsgard was denied coverage, the parties entered into a Miller-Shugart settlement agreement, through which Damsgard agreed to the entry of a judgment against him in the amount of $100,000.  (Id. Ex. F.)  The parties agreed that the settlement amount could only be recovered under the Policy issued by Defendants.  (Id.)  Miles then commenced the present action, seeking a declaration that Brooke's claim against

3

Damsgard is covered under the Policy, therefore requiring Defendants to pay the sums due and owning under the Miller-Shugart settlement agreement. (Compl. ¶ 38.)

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**ANALYSIS**

**I.     The legal framework**

"State law governs the interpretation of insurance policies." Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Under Minnesota law,[5] the interpretation of an insurance policy is a question of law for the Court. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997). When an insurance policy's language is unambiguous, a court must interpret "that language in accordance with its plain and ordinary meaning." Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004).

In this case, the Policy's household exclusion provides in relevant part: "We do not cover . . . bodily injury to you or any insured . . . nor will we defend you or such insured in any lawsuit brought against each other directly or indirectly by a third party." (Johns Aff. Ex. G.) Under the policy, an "insured" is defined as:

> a. person shown as the named insured on the Declarations of this policy; b. your spouse if he or she lives in your household; and c. <u>any other person who lives in your household and is related to you by blood, marriage, adoption or is a ward or a foster child</u>.

(Id. (emphasis added).) In this case, both parties request the Court to interpret the Policy to determine whether Brooke is an "insured" for purposes of the household exclusion.[6] If Brooke is an "insured" under the Policy, the household exclusion applies and there will

---

[5] Neither party asserts that another state's law should apply in this case. See BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003) (law of forum state applies by default where parties do not raise choice-of-law issue).

[6] The parties do not dispute that Scott Damsgard is an "insured" under the policy.

be no coverage for Brooke's underlying claim against Damsgard. If there is no coverage, the Miller-Shugart settlement agreement will be unenforceable.

To determine whether Brooke was an "insured" under the Policy, the Court must determine whether Brooke lived in her grandmother's home.[7] Because the Court finds the Policy's phrase "lives in your household" to be unambiguous, it will give the phrase "its plain and common meaning." Mut. Serv. Cas. Ins. Co. v. Olson, 402 N.W.2d 621, 623-24 (Minn. Ct. App. 1987).[8]

## II. Determining residency for insurance coverage purposes

The Minnesota Supreme Court has defined the word "household" for insurance coverage purposes as "generally synonymous with 'family' and as including those who dwell together as a family under the same roof." Van Overbeke v. State Farm Mut. Auto. Ins. Co., 227 N.W.2d 807, 810 (Minn. 1975). A household is a "social unit which is something more than a group of individuals who occasionally spend time together in the same place." Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 307 (Minn. 1995). While a person can only have one domicile, a child can reside in her mother's household and her father's household for insurance coverage purposes. Am. Family Mut. Ins. Co. v. Thiem, 503 N.W.2d 789, 790 (Minn. 1993).

---

[7] The parties do not dispute that Brooke is a blood relative of her grandmother, Marlyes Damsgard.

[8] The Minnesota Court of Appeals has found the similar phrase, "resident of your household," to be unambiguous. Olson, 402 N.W.2d at 623.

In order to determine whether a person is a resident of a household pursuant to an insurance policy, Minnesota courts analyze three factors. Firemen's Ins. Co. v. Viktora, 318 N.W.2d 704, 706 (Minn. 1982) (applying Pamperin v. Milwaukee Mut. Ins. Co., 197 N.W.2d 783, 788 (Wis. 1972)). These three factors (the "Pamperin factors") are:

> 1. Living under the same roof; 2. in a close, intimate and informal relationship; and 3. where the intended duration is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

Pamperin, 197 N.W 2d at 788. In Minnesota, the Pamperin factors are analyzed "as of the date of the event that triggers a claim for coverage," Allstate Prop. & Cas. Ins. Co. v. Myllykangas, 504 F. Supp. 2d 596, 601 (D. Minn. 2007) (Doty J.), and "are interpreted broadly to examine all aspects of the relationship." Jestus v. Jestus, No. A07-1945, 2008 WL 4471405, at *4 (Minn. Ct. App. Oct. 7, 2008) (internal quotation marks and citation omitted).

Generally, Minnesota courts combine the first two Pamperin factors and equate them to "family." Viktora, 318 N.W.2d at 707. To determine whether a child is living under the same roof as a parent in a "close, intimate and informal relationship," Minnesota courts look to such factors as the time spent in the home, the space provided for the child within the home, the belongings kept by the child in the home, and the relationship between the child and other household members. Olson, 402 N.W.2d at 624.

In applying the third Pamperin factor of "intended duration," courts have not required permanent residence, but do require more than a "temporary sojourn."

Pamperin, 197 N.W.2d at 787-88. Therefore, the "intended duration" factor is "applied in the broader sense of the relationship of the persons to each other and to the household, rather than to the lengths of time of individual visits." Olson, 402 N.W.2d at 624. In the context of divorced parents sharing custody of a child, Minnesota courts also consider the existence or non-existence of a joint parenting effort, the exercise of parenting time, the degree of parental involvement, and the intimacy of the relationship between the parent and child. See Jestus, 2008 WL 4471405, at *4-5.

### III. Genuine issue of material fact

Whether a person lives in a household for purposes of insurance coverage is generally a question of fact. Fruchtman v. State Farm Mut. Auto. Ins. Co., 142 N.W.2d 299, 300 (Minn. 1966). In fact, "[n]o one single factor controls. Rather, they all merge to create either a portrait of a relationship akin to household membership or one more transient in character." State Farm Fire & Cas. Co. v. Short, 448 N.W.2d 560, 563 (Minn. Ct. App. 1989). However, if there are no disputed material facts, the issue of residency can be resolved as a matter of law. Thiem, 503 N.W.2d at 790.

After a careful review of the record, the Court determines that the issue of Brooke's residency cannot be resolved as a matter of law. Specifically, the record before the Court presents several disputed material facts that render summary judgment inappropriate.[9] These factual disputes directly relate to the Pamperin factors, which

---

[9] Both parties contend in their memoranda that there are no disputed material facts in this case. (Defs.' Mem. in Supp. at 8; Pl.'s Mem. in Supp. at 8.) The parties reasserted this position at oral argument. However, the record before the Court does not support their assertion.

8

require the Court to analyze the familial relationship between Brooke, Damsgard, and Marlyes Damsgard. Olson, 402 N.W.2d at 624.

First and fundamentally, there is a factual dispute as to the nature of Brooke's relationship with Damsgard. See Morgan v. Ill. Farmers Ins. Co., 392 N.W.2d 37, 39-40 (Minn. Ct. App. 1986) (noting that the intimacy of the relationship between the persons in the household is an "important" factor in resolving the issue of residency for insurance coverage purposes). Miles testified that Damsgard did not know how to "relate with a little girl," and that Brooke did not want to spend time with Damsgard. (Miles Dep. Tr. at 60, 69-70.) In contrast, Marlyes Damsgard testified that Brooke would often want to sleep in the same bed as Damsgard, indicating a close relationship. (M. Damsgard Dep. Tr. at 9.) Accordingly, there remains an important question of fact as to the true nature of the father-daughter relationship in this case. See Olson, 402 N.W.2d at 624 (noting that the third Pamperin factor is "applied in the broader sense of the relationship of the persons to each other and to the household").

Second, there is a factual dispute as to whether Damsgard exercised all of his allotted parenting time. Miles testified that Damsgard missed several of his parenting-time weekends with the children to go snowmobiling. (Miles Dep. Tr. at 33, 65.) However, Damsgard did not specifically remember missing this time. (S. Damsgard Dep. Tr. at 63.) Moreover, Marlyes Damsgard testified that Damsgard spent all of the time he could with his children. (M. Damsgard Dep. Tr. at 23.) Therefore, a factual question exists as to whether Damsgard missed several parenting-time weekends with Brooke,

9

which is an important factor in determining residency for insurance coverage purposes. See Jestus, 2008 WL 4471405, at *1, 4 (noting that the father had missed several weekends and weeknights of parenting time with his child when analyzing the residency of the child in the father's home).

Third, the parties dispute the underlying custody arrangement between Damsgard and Miles at the time of Brooke's injury. Miles contends that she had sole legal and physical custody of Brooke pursuant to a temporary court order. (Kerfeld Aff. Ex. 2; Miles Dep. Tr. at 12, 27-28.) However, Damsgard testified that at the time of Brooke's injury, he had regained joint legal custody of Brooke through an informal agreement with Miles. (S. Damsgard Dep. Tr. at 69-70.) While a child may be considered a resident of a noncustodial parent's household, Thiem, 503 N.W.2d at 790, the custodial rights of Damsgard are certainly relevant as the Pamperin factors "are interpreted broadly to examine all aspects of the relationship." Jestus, 2008 WL 4471405, at *4 (internal quotation marks and citation omitted).

Fourth, there is a factual dispute regarding Damsgard's parenting capabilities. See Jestus, 2008 WL 4471405, at *5 (noting that evidence of a father's parenting capabilities is relevant to the issue of a child's residency). For example, Miles testified that Damsgard did not have car seats for the children and that she once observed Hunter "strapped to a lawn chair with a dog leash as a makeshift seat and seat belt" in Damsgard's vehicle. (Miles Dep. Tr. at 18.) In contrast, Damsgard testified that he did in fact have car seats for the children. (S. Damsgard Dep. Tr. at 66.) In addition,

Damsgard testified that he discussed parenting issues with Miles. (Id. at 66.) Thus, a fact issue remains regarding Damsgard's parenting skills.

Finally, there is a factual dispute as to whether Marlyes Damsgard provided Brooke with personal space within her household. Marlyes Damsgard and Damsgard testified that Brooke had a bedroom in Marlyes Damsgard's home where she had a bed, furniture, clothing, and toys. (S. Damsgard Dep. Tr. at 33-34, M. Damsgard Dep. Tr. at 9-10.) However, Miles asserts that Brooke "never considered it [to be] 'her' bedroom." (Pl.'s Reply Mem. at 4 (citing Miles Dep. Tr. at 60).) Therefore, there is a factual issue regarding Brooke's use of, and attachment to, the bedroom in Marlyes Damsgard's home. The nature of the use of the bedroom is relevant to whether Brooke resided in Marlyes Damsgard's home for insurance coverage purposes. See Jestus, 2008 WL 4471405, at *1 (noting that while a child had a bedroom in his father's home, the child "did not personalize the bedroom").

In sum, summary judgment is only appropriate when "there is no dispute of fact and where there exists only one conclusion." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994) (internal quotation marks and citation omitted). In this case, disputed material facts prevent the Court from determining, as a matter of law, whether Brooke lived in Marlyes Damsgard's home for insurance coverage purposes. Accordingly, summary judgment must be denied.[10]

---

[10] Miles also argues that the Policy's household exclusion is unenforceable for reasons of public policy. (Pl.'s Mem. in Opp'n at 12-15.) However, the Minnesota Supreme Court has held such exclusions to be enforceable. Am Family Mut. Ins. Co. v. Ryan, 330 N.W.2d 113, 115-16

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 21) and Defendants' Motion for Summary Judgment (Doc. No. 17) are **DENIED**.[11]

Date: August 5, 2009

                                                  s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge

---

(Minn. 1983). Moreover, the Minnesota Court of Appeals has specifically held that household exclusions do not contravene public policy. Vierkant v. AMCO Ins. Co., 543 N.W.2d 117, 121 (Minn. Ct. App. 1996).

[11] This matter is on the Court's civil trial calendar for November 1, 2009, and, unless otherwise resolved, will go to trial in November or earlier. Because all pretrial proceedings, including discovery, have been completed, it is likely that this case will be called for trial in September or October. Counsel will receive at least 21 days notice of a specific trial date, but should be prepared to go to trial as early as September 8, 2009.